UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:23-cr-148 |
| Plaintiff, | Hon. Hala Y. Jarbou<br>Chief United States District Judge |
| vs. | |
| FATAI OKUNOLA, | |
| Defendant.<br>_____/ | |

**DEFENDANT FATAI OKUNOLA'S MOTION FOR VARIANCE
UNDER 18 U.S.C. 3553(a)**

On January 14, 2025, this Court will sentence Fatai Okunola for conspiracy to commit wire fraud, money laundering, and false statement relating to naturalization, after Mr. Okunola participated in a Nigerian fraud scheme and received money from fraud victims. The sentencing guidelines as calculated by the United States Probation Department call for a sentence between 97 to 121 months imprisonment. The probation department has recommended a sentence of 97 months, at the low end of the guidelines. In addition to his objections to the calculated guidelines in a separate sentencing memorandum, Mr. Okunola requests this Court to consider a downward variance, under the sentencing factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

Fatai Okunola is a 37 year-old husband and father, who was born and raised in Lagos, Nigeria. One of eight children, Mr. Okunola's parents, a now-retired police officer and shop-owner, raised him with love, and taught him to respect others and to value his family. He attended high school and college in Nigeria, earning a degree in accounting, and in 2015, met his wife, Jasneen, on an Islamic dating website. After marrying, the couple moved to the Kalamazoo

area in 2017, where Jasneen is from and has family. Mr. Okunola and Jasneen have three young children, ages six, four, and one year-old. Mr. Okunola worked a number of jobs to support himself and his family, such as a FedEx package handler, GrubHub delivery driver, Walmart delivery driver, and as a caregiver for Community Living Options. He and Jasneen made frequent and lengthy trips to Nigeria, so that their children could know Mr. Okunola's family and heritage.

Unfortunately, during this same time period, Mr. Okunola forgot the lessons his parents taught him about respect and hard work, and committed the instant offense. He agreed to accept and move money, at the request of others, that he knew was fraudulent and from victims, and did so over a five-year period. He sent the majority of funds he received to Nigeria, through money transfer services (Ping Express, World Remit), and kept a portion for himself. (PSR, ¶202). During this same time, he applied for naturalization to the United States, and did not disclose this activity on his application. Law enforcement discovered Mr. Okunola's offense when investigating Ping Express, and he was charged with conspiracy to commit wire fraud in December 2023. In March 2024, the government sought and obtained a Superseding Indictment, adding additional charges of wire fraud and money laundering. (PSR, ¶2).

On July 30, 2024, Mr. Okunola pled guilty to conspiracy to commit wire fraud, money laundering, and false statement relating to naturalization, pursuant to a written plea agreement. (PSR, ¶12).

## ARGUMENT

**I.     This Court Should Vary Downward From the Guidelines Based on the 18 U.S.C. § 3553(a) Factors.**

When sentencing a defendant who has been found guilty of a crime, the Court must comply with the basic goals of sentencing set forth in 18 U.S.C. § 3553(a). *Rita v. United States*,

127 S. Ct. 2456, 2463 (2007). The purpose of sentencing is to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a); *United States v. Kimbrough*, 128 S.Ct. 558, 169 (2007). The goals of sentencing are "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D); *Kimbrough*, 128 S. Ct. at 569. In *United States v. Furguson*, 456 F.3d 660, 665 (6th Cir. 2006), the Court held that after *United States v. Booker,* 543 U.S. 220 (2005), a judge must impose the lowest sentence that is minimally sufficient to meet those goals, regardless if that sentence is probation, time served, a mandatory minimum sentence, the statutory maximum sentence, or somewhere in between. While courts must continue to consider the sentencing guidelines, they are no longer mandatory and courts are only required to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment. See 18 U.S.C. § 3553(a). Here, Mr. Okunola asks that this Court consider the following factors and vary from the advisory guidelines range.

> **a. Mr. Okunola asks the Court to consider the nature and circumstances of the offense and his own history and characteristics, which include no prior criminal history, family support and true remorse regarding the offense.**

Mr. Okunola has no excuse or justification for what he did. He did not just take money from the victims, some of whom gave all their savings and retirement accounts; he took their dignity and violated their sense of privacy. Worse, he did not just make this decision once or twice, but many times over a five-year period. Being from Nigeria, where internet scams are prevalent, Mr. Okunola was and is well-aware of fraud scams, and the financial and emotional damage that they cause. His parents, one of whom was a police officer, did not raise him to act this way. They taught him to love and respect others, and unfortunately, he lost sight of those lessons. His family and friends have expressed disappointment and sadness at the choices he has made, but also speak of a kind father and husband who deeply loves his family. (Attachment A, Letters of Support).

Mr. Okunola is deeply disappointed in himself for what he has done, as he expressed to the probation department: "I feel terrible about it. I'm very sorry for it, from the bottom of my heart. It is wrong in every way" and "I feel terrible and sad because the bad decisions I took doesn't represent the type of person I am and I am ashamed about the bad decisions I made. I regret what I did because it is wrong." (PSR, ¶204). His actions do not reflect the person he was raised to be, or the kind of role model he wants to be for his children. He is determined to do better, for his family, and for himself. The road to rebuilding the trust that others had in him will not be easy, but he is ready to do so.

In the year since Mr. Okunola has been in custody and separated from his family, the wrongness of his actions, the severity of his potential punishment, and the impact that punishment will have on his life and the lives of his wife and children, have weighed heavily on him, and he will never forgive himself for the choices he has made. Being a father is one of Mr. Okunola's

proudest roles, and the role that is most important to him. He knows that his decision to break the law will be felt by his entire family, and that his absence will have a significant impact on his young children. He knows that he will likely miss important moments and milestones not only in his children's lives, but in the lives of his parents and siblings. His mother is severely ill, and he prays he has the chance to see her again. Despite his mistakes, his family and friends love and support him, and describe a man who gives everything he has to his family and loved ones. (Attachment A, Letters of Support). He has taken responsibility for his actions and decisions, of which he is ashamed. He knows that in pursuit of a better life for himself and his family, he has now jeopardized their financial security and wellbeing, and he prays that he has the chance to make it up to them. He also knows that he has significantly affected the lives of the victims of his offense, and is deeply remorseful for the pain he has caused.

    **b. Mr. Okunola asks the Court to consider whether a lengthy sentence is necessary to provide deterrence and adequate punishment.**

Mr. Okunola will punish himself for the rest of his life for the decisions he has made. He will never get back the time he has lost, and he will forever carry the weight of this offense. He has truly learned from his mistakes, and has taken time to reflect on how he got to this point. He determined to rebuild his life after his release from custody, and to be a role model for his children. He is ready to do so, and prepared to accept this Court's punishment. However, he asks this Court to consider whether a term below the guidelines will satisfy the needs of sentencing, while still giving him the opportunity to rebuild his life. He asks the Court to craft a sentence that considers his lack of prior criminal history, true remorse, family support and devotion to his family, and that is sufficient, but not greater than necessary, to achieve the goals of sentencing.

5

## CONCLUSION

For the foregoing reasons, Mr. Okunola asks this Court to grant his request for a downward variance.

Respectfully Submitted,

Dated:  December 31, 2024

s/ Rachel L. Frank
Rachel L. Frank
Attorney for Defendant Fatai Okunola
Rachel Frank Law, PLLC
300 Ottawa Avenue NW, Suite 810
Grand Rapids, MI 49503
(616) 229-0563
rachel@rachelfranklaw.com